## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Arthur W. Goetz, | : | Case No. 3:08 CV 01320 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |
| | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Pending are the parties' Briefs on the Merits and Plaintiff's Reply (Docket Nos. 17 20 and 22). For the following reasons, the Commissioner's decision is affirmed.

### I. PROCEDURAL BACKGROUND

On July 29, 2002, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI alleging that he had been disabled since April 1, 2002 (Tr. 15, 68-70). The application for DIB was denied on January 3, 2003 (Tr. 54-56). Plaintiff filed a second application on July 10, 2003 alleging that he had

been disabled since April 1, 2002 (Tr. 65-67). The application was denied initially on March 2, 2004 and upon reconsideration on June 17, 2004(Tr. 15, 49-51). On May 9, 2006, Plaintiff, represented by counsel, and Vocational Expert (VE) Joseph Havrenak, appeared and testified before Administrative Law Judge (ALJ) Bryan J. Bernstein (Tr. 310). ALJ Bernstein rendered an unfavorable decision on April 3, 2007 (Tr. 15-24). The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision of the Commissioner (Tr. 5-7). Plaintiff filed a timely request for judicial review in the United States District Court for the Northern District of Ohio, Western Division.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Testimony.

Plaintiff completed the ninth grade. He was unable to complete the requirements for a general equivalency diploma (Tr. 321). Plaintiff resided in an apartment compliments of the Housing Choice Voucher Program provided by the United States Department of Housing and Urban Development (Tr. 319).

Plaintiff exhibited symptoms relate to auditory hallucinations, blindness, depression, paranoia, a history of drug and alcohol abuse. Specifically, Plaintiff had been diagnosed with blindness in one eye and his vision in the other eye was impaired (Tr. 318, 322).

Plaintiff got a shot biweekly of medication used for the treatment of schizophrenia and/or bipolar disorders. Twice daily, Plaintiff consumed two antidepressants (Tr. 317, 318). Although the medication controlled Plaintiff's auditory hallucinations, the side effects from the medication included drowsiness (Tr. 322, 323). He typically had to lie down after taking his morning dosages of medication. He slept for three to four hours (Tr. 323). When the voices attempted to compel certain behaviors, Plaintiff would stay at home (Tr. 324). It was Plaintiff's opinion that he had three to four bad days weekly (Tr. 324).

Plaintiff was paranoid around a group of people (Tr. 324). In fact, he was fired from Kentucky Fried Chicken because could not cope with the stress originating from a perceived belief that his co-workers were talking about him (Tr. 325).

Apparently, Plaintiff had a prior history of drug and alcohol usage. Although he had abstained from the use of alcohol or illicit drugs since January 2003, the auditory hallucinations persisted (Tr. 326).

Plaintiff stole from his employer and was incarcerated (Tr. 316). While awaiting adjudication of his criminal case, Plaintiff worked as a busser. He was fired because a "voice" told him not to go to work (Tr. 314, 315). While incarcerated, Plaintiff served the meals and worked as a cashier (Tr. 317).

Plaintiff admitted that he had difficulty reading and that he did not like to read. Plaintiff obtained the assistance of a friend to complete "paperwork (Tr. 321). He fried his food and shopped for groceries (Tr. 320).

It was Plaintiff's contention that he could not be productive because of his mental illness impeded his ability to give 100%. Further, the side effects of fatigue would be dangerous around machinery (Tr. 327, 328).

**B.     VE Testimony.**

An individual could perform Plaintiff's past relevant work of a caretaker if he or she could: (1) engage in close reading or observing, limited to use of his or her peripheral vision, (2) not engage in work that imposes intense contact with the public, (3) not perform work that imposes a closely regimented pace of production (4) not work in an environment that would produce unacceptable stress and (5) permit the employee an opportunity to catch up with ordinary productivity (Tr. 330-331). Alternately, this individual could perform work as a landscape person, hand packager and laundry folder. There were 200 or 225 landscaper jobs, 2,000 to 2,500 hand packager jobs, and 751,000 laundry folder jobs in the region. All of

3

these positions were performed at the unskilled, light exertional level (Tr. 332). At the sedentary, unskilled level, there approximately 500 microfilm document preparer in the region (Tr. 332).

There were no jobs for a person with a profile characterized by a moderate limitation in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention, concentrate for extended periods of time, complete a normal workday and work week without interruption, interact appropriately with the general public, ask simple questions, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriately behavior, adhere to basic standards of neatness and cleanliness, and set realistic goals (Tr. 336).

### III. MEDICAL EVIDENCE

On April 3, 2002, Dr. Michael D. Wagner, Ph. D., determined that Plaintiff had two medically determinable impairments: alcohol/cocaine abuse in early sustained remission and a major depressive disorder. Neither impairment satisfied the diagnostic criteria of 12.04 of the Listing (Tr. 162, 167). Plaintiff's impairments only resulted in a mild degree of functional limitations in the restriction of activities of daily living and in maintaining concentration, persistence or pace and a moderate degree of limitations in maintaining social functioning (Tr. 169). In November 2002, Dr. Wagner opined that Plaintiff was markedly limited in his ability to understand and remember detailed instructions and carry out those detailed instructions (Tr. 172).

Dr. Nader Zeitouni, M.D., established in April 10, 2002 that Plaintiff suffered from depression (Tr. 153). Dr. Zeitouni monitored Plaintiff's use of medication designed to treat a major depressive disorder on June 10, 2002 (Tr. 152). On June 22, 2002, Plaintiff was prescribed another medication that was also designed to treat depression and anxiety. Lab results confirmed that Plaintiff had hepatitis B and C (Tr. 149). Dr. Zeitouni confirmed the presence of a right middle ear infection on August 7, 2002 (Tr. 146).

In October 2002, Plaintiff underwent a computed tomography (CT) scan of the pelvis and abdomen. The medical interpreter noticed considerable gastric content but no findings of note (Tr. 154).

On October 21, 2002, Dr. David J. Forsythe, M. D., a psychiatrist, diagnosed Plaintiff with a major depressive disorder, hepatitis C, hypertension, obesity, alcohol and cocaine abuse, in early sustained remission, and moderate symptoms or moderate difficulty in social, occupational, or school functioning (Tr. 158).

Dr. G. T. Matanguihan, Jr., M. D., conducted an examination on December 13, 2002 and then diagnosed Plaintiff with loss of vision in his left eye, 20/200 vision in the right eye without corrective lenses and Hepatitis C, by history (Tr. 182). The manual muscle testing results showed that Plaintiff could raise his shoulders, elbows, wrists, fingers, hips, knees and feet against maximal resistance. His grasp, manipulation, pinch and fine coordination were within a normal range (Tr. 184). The range of motion in Plaintiff's shoulders, elbows, wrists, hands-fingers, dorsolumbar spine, hips, knees and ankles was normal (Tr. 185-186).

A licensed social worker at Unison Behavioral Health Center (Unison) diagnosed Plaintiff with major depression, recurrent severe without psychosis and serious symptoms or any serious impairment in social, occupational, or school functioning on July 14, 2003 (Tr. 302).

On July 30, 2003, Dr. Susan Trebbe-Haas, M.D., a specialist in psychiatry, diagnosed Plaintiff with major depressive disorder with psychotic features, ruled out schizoaffective disorder, history of alcohol and cocaine abuse, Hepatitis C, blindness in the left eye and moderate symptoms or moderate difficulty in social, occupational or school functioning. She recommended an add-on treatment to Plaintiff's drug therapy, namely, Abilify® marketed for the treatment of depression, bipolar disorders and schizophrenia (Tr. 272).

On September 3, 2003, Plaintiff showed signs of anxiety and paranoia (Tr. 279- 280). Suffering

5

from increasing depression, suicidal ideations and auditory hallucinations, Plaintiff was admitted to St. Charles Mercy Hospital on September 7, 2003 for psychiatric evaluation and/or treatment (Tr. 189, 197, 203). Plaintiff was feeling better on September 15, 2003 (Tr. 192). On September 24, 2003, Plaintiff had maintained safely on his medication (Tr. 277).

Dr. Roseann F. Umana, Ph.D., in psychology, diagnosed Plaintiff with a medically determinable impairment that did not meet 12.04 of the Listing, namely a major depressive disorder (Tr. 217). She also noted the presence of substance addictions in alleged short term remission (Tr. 222). These impairments imposed a mild limitation in the restriction of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. Dr. Umana noted that there were one or two episodes of deterioration (Tr. 224). Plaintiff had a marked inability to interact appropriately with the general public (Tr. 228).

On February 11, 2004, Plaintiff underwent an ophthalmological consultative examination. Glasses were recommended to increase Plaintiff's vision (Tr. 234).

Dr. Paul T. Heban, MD., in internal medicine, opined on February 23, 2004 that Plaintiff had no exertional, postural, manipulative or communicative limitations. He was limited in visual acuity and field of vision (Tr. 240). He was also unable to withstand exposure to hazards (Tr. 241).

Commencing on April 7, 2004, Plaintiff was scheduled to maintain monthly meetings at Unison for purposes of maintaining compliancy with taking his medication, assessing side effects, reducing the symptoms of depression and adjusting the medication, as needed (Tr. 256, 262). On May 23, 2004, it was noted that Plaintiff was "getting better" (Tr. 260). A counselor evaluated Plaintiff's ability to do work related activities on August 23, 2004. Plaintiff had difficulty working with people or dealing with work stresses (Tr. 283). Plaintiff had a fair ability to understand, remember and carry out complex or detailed

6

instructions and fair ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability (Tr. 284). Plaintiff continued to have auditory hallucinations and on March 10, 2006, the dosage of his medication induced intramuscularly every two weeks was increased (Tr. 289-300).

On May 12, 2006, Dr. Siva Yechoor, M.D., a specialist in psychiatry, opined that Plaintiff was moderately impaired in his ability to (1) remember, understand and follow simple instructions because he continued to have auditory hallucinations, (2) maintain attention and concentration for two-hour periods of time (3) perform work activities at a reasonable pace, (4) keep a regular schedule, (5) interact appropriately with others, (6) withstand the stresses and pressures of routine simple and unskilled work and (7) make judgments that are commensurate with the functions of unskilled work (Tr. 304-305).

## IV. STANDARD FOR DISABILITY

"The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920, respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). DIB and SSI are available only for those who have a "disability." *Id.* (*citing* 42 U.S.C. §§ 423(a) and (d), *See also* 20 C.F.R. § 416.920). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

To determine disability, the Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (a)(4) (Thomson Reuters/West 2009).

First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not

7

disabled. 20 C.F.R. §§ 404.1520 (a)(4)(i) and 416.920(a)(4)(i) (Thomson Reuters/West 2009).

Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. 20 C.F.R. §§ 404.1520 (a)(4)(ii) and 416.920(a)(4)(ii) (Thomson Reuters/West 2009).

Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §§ 404.1520 (a)(4)(iii) and 416.920(a)(4)(iii) (Thomson Reuters/West 2009).

Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. 20 C.F.R. §§ 404.1520 (a)(4)(iv) and 416.920(a)(4)(iv)(Thomson Reuters/West 2009).

Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520 (a)(4)(v) and 416.920(a)(4) (iv) (Thomson Reuters/West 2009).

## V. ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through at least June 30, 2007.

2. Plaintiff had not engaged in substantial gainful activity since April 1, 2002, the alleged onset date.

3. Plaintiff had severe impairments. Plaintiff did not have an impairment or combination of impairments that met or were medially equal to ones listed in 20 C. F. R. Part 404, Subpart P, Appendix 1.

4. Plaintiff's testimony was not reliable.

6. Plaintiff had a residual functional capacity that was limited by non-exertional impairments. Plaintiff was unable to perform any past relevant work.

7. Plaintiff, a "younger individual" between the ages of eighteen (18) and forty-four (44), had a limited education and was literate but had some deficiencies and was able to communicate in English.

8. Transferability of job skills was not material to the determination of disability because using the Medical Vocational Rules as a framework supported a finding that Plaintiff was not disabled.

9. When consideration was given to Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

10. Plaintiff was not under a disability as defined in the Act from April 1, 2002 through April 3, 2007.

(Tr. 15-24).

## VI. STANDARD OF REVIEW

This Court exercises jurisdiction over review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383 (c)(3). *McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 832-33 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The decision must be affirmed if the ALJ's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision. 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept.'" *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (*citing Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S.

Ct. 2428 (1983) (*quoting Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id*. (*citing Key, supra*, 109 F.3d at 273).

## VII.  DISCUSSION

In his Brief, Plaintiff discusses three assignments of error.  First, the decision is legally deficient in its analysis of medical source opinions.  Second, the decision fails to articulate a reason for rejecting the moderate limitations identified by the State agency psychologist.  Third, the decision erred in its rationale for finding that Plaintiff's testimony was not reliable.  In response, Defendant argues that the ALJ attributed proper weight to the treating psychiatrist's opinion considering that the opinion was not well-supported by objective clinical evidence and was inconsistent with the record as a whole.  Next, Defendant argues that the ALJ did not improperly reject the opinions of the State agency reviewing psychologists.  Finally, Defendant opines that the ALJ's credibility finding was reasonable and supported by substantial evidence.

    **1.**    **THE TREATING PSYCHIATRISTS OPINION.**

Plaintiff contends that the ALJ erred as a matter of law by replacing his opinion for those of treating psychiatrist, Dr. Yechoor.  Instead of providing good reason for rejecting Dr. Yechoor's opinions, the ALJ impermissibly rejects Dr. Yechoor's opinion based on a perceived lack of critical insight and testing, a suggestion that Plaintiff is seeking financial gain and her note that Plaintiff was improving.  Dr. Yechoor's opinions were supported by the State agency psychologist and was indicative that his involuntary hallucinations were not controlled with medication.

Where the Commissioner's decision to reject a claimant's disability application is otherwise supported by substantial evidence, reversal will nonetheless be required if the agency fails to follow its own

procedural regulation requiring the agency to give good reasons if it fails to give weight to a treating physician's opinions in the context of a disability determination. *Woodard v. Astrue*, 2009 WL 2065781 (M. D. Tenn. 2009) (*citing Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ must give the opinion of a treating source controlling weight if he or she finds the opinion to be well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the case record. *Id*.

When the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion. *Id.* (*citing Harris*, 756 F.2d at 431-35). This requirement of reason-giving exists to (1) enlighten a claimant who knows that his or her physician has deemed him or her disabled, (2) ensure that the ALJ properly applied the treating physician rule and (3) permit meaningful review of the ALJ's application of the rule. *Id.* (citations omitted ).

To the extent that Plaintiff treated with Dr. Yechoor from July 8, 2003 through March 10, 2006, the ALJ considered her a treating source. Dr. Yechoor's notes are replete with recounts of Plaintiff's subjective complaints and the ensuing treatment (Tr. 286-300). No medically acceptable clinical and laboratory diagnostic testing was employed. In fact, the weight attributed to Dr. Yechoor's opinions were compromised by the lack of testing. To the extent possible, the ALJ considered the treatment relationship, supportability of Dr. Yechoor's opinions, consistency of those opinions with the record as a whole, and her speciality in determining what weight should be given to Dr. Yechoor's opinions were all considered by the ALJ (Tr. 21).

The ALJ did not err in failing to give controlling weight to the opinions of Dr. Yechoor.  So long as the ALJ's conclusion is supported by substantial evidence, the Magistrate cannot disturb the conclusion reached by the ALJ.

### 2. THE STATE AGENCY PSYCHOLOGIST.

Plaintiff contends that the ALJ is obliged to mention and discuss the State agency psychologist's opinion.  He did neither.  Such failure was error.

Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  20 C. F. R. § 404.1527(f)(2)(i) (Thomson Reuters/West 2009).  However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  20 C. F. R. § 404.1527(f)(2)(i) (Thomson Reuters/West 2009).  Therefore, administrative law judges **must** consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.  20 C. F. R. § 404.1527(f)(2)(i) (Thomson Reuters/West 2009) (*citing* Section 404.1512(b)(6)).

The opinions of State agency medical and psychological consultants can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.  TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDING OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL

CONSULTANTS AND OTHER PROGRAM PHYSICIANS, Social Security Ruling 96-6p, 1996 WL 374180 at *3 (July 2, 1996).

Although the ALJ did not identify Dr. Umana as the source, he acknowledged her opinions and applied the regulatory factors on page four of ten in his decision (Tr. 18). The ALJ had discretion in determining whether to attribute any weight to Dr. Umana's opinion. Insofar as Dr. Umana's opinion was supported by Plaintiff's work history and his own testimony and was consistent with the record, the ALJ gave considerable weight to Dr. Umana's opinion specifically as it relates to summarizing Plaintiff's mental impairment and functional limitations. Under the regulations, that is all that he was required to do.

### 3. PLAINTIFF'S CREDIBILITY.

Plaintiff contends that the ALJ erred in his application of the standards imposed under the Act for assessing credibility. He did not apply the Social Security standards, instead, he had a clear presumption against credibility because of Plaintiff's history of incarceration. Plaintiff seeks remand so that, at a minimum, his credibility is accurately assessed.

Whenever a claimant's complaints regarding symptoms, their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on the entire case record. *Rogers v. Commissioner*, 486 F. 3d 234, 247 (6th Cir. 2007). The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.*

Credibility determinations by the ALJ are to be accorded great weight and deference, as the ALJ is in a position to observe the demeanor and credibility of a witness. *Felisky v. Bowen,* 35 F. 3d 1027, 1036 (6th Cir. 1994). However, that assessment must be supported by substantial evidence. *Id.* Only if the ALJ

finds a claimant's testimony not credible, must he or she clearly articulate reasons for so finding. *Id.* In other words, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony and other evidence. *Walters v. Commissioner of Social Security,* 127 F. 3d 525, 531 (6th Cir. 1997).

Here, the ALJ rejected the claimant's testimony, finding it not credible. He proceeded to articulate reasons for so finding. The ALJ discounted Plaintiff's credibility based on other character evidence. Such consideration is not excluded from consideration under the rules. He referred to the contradictions in the medical report and the Plaintiff's testimony. The Magistrate finds such explanation sufficiently specific to make clear to Plaintiff the weight given his statements and the reasons for discounting such statements.

## VIV.  CONCLUSION

Pursuant to Sentence Four of 42 U. S. C. § 405(g), the Commissioner's decision is affirmed and this case is dismissed.

**IT IS SO ORDERED**.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date: September 9, 2009